**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CERESA COHRAN, an individual, ) | |
| ) | Case No.: |
| Plaintiff, ) | |
| ) | Judge: |
| v. ) | |
| ) | |
| UBER TECHNOLOGIES, INC., a foreign corporation; ) | **JURY TRIAL DEMANDED** |
| LYFT, INC., a foreign corporation; CITY OF CHICAGO, ) | |
| a municipal corporation; ) | |
| ) | |
| Defendants. ) | |

**VERIFIED COMPLAINT**

NOW COMES the Plaintiff, Ceresa Cohran, by and through her attorneys, for her Verified Complaint against the Defendants, UBER TECHNOLOGIES, INC.; LYFT, INC.; and the CITY OF CHICAGO, and in support thereof states and alleges as follows:

**NATURE OF THE ACTION**

1.      This is a federal–question action involving claims under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendments of the U.S. Constitution, and Illinois common law (claims of defamation, tortious interference, and negligence). Cohran worked as a rideshare driver for Uber from 2017 until April 2024 and for Lyft from April 2024 until May 2024 until she was banned from both apps due to an alleged "safety incident," which Cohran denies ever occurred.  By this action, Cohran seeks to enjoin each of the Defendants from continuing their practice of unlawfully interfering with Cohran's ability to earn a living, as well as other remedies as set forth below.

2.      This action also seeks to challenge the constitutionality of the City of Chicago's ordinance Rule TNP 1.10 "Notification of Deactivated Drivers" (hereinafter, the "Ordinance"), which mandates that Transportation Network Providers (TNPs) notify the City of Chicago when

drivers are deactivated. Plaintiff contends that the Ordinance violates her constitutional rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses.

## PARTIES

3.     Plaintiff Ceresa Cohran ("Cohran") is an individual who resides in Cook County, Illinois.

4.     Defendant Uber Technologies, Inc. ("Uber") is a Delaware corporation with its principal place of business in San Francisco, CA. Uber operates a nationwide transportation network platform that allows users to request rides from independent drivers (including Illinois).

5.     Defendant Lyft, Inc. ("Lyft") is a Delaware corporation with its principal place of business in San Francisco, CA.  Lyft similarly operates a nationwide transportation network platform that allows users to request rides from independent drivers (including Illinois).

6.     Defendant City of Chicago is a municipal corporation located in Illinois and enforces transportation–related ordinances, including those that regulate rideshare companies like Uber and Lyft.  The City of Chicago is authorized by statute to regulate taxis and all others pursuing like occupations. *See* 65 ILCS 5/11–42–6. The City of Chicago also regulates rideshare operators like Uber and Lyft. *See* Ch. 9–115 of the Municipal Code of Chicago (Transportation Network Providers Rules).

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction), as this action arises under the Constitution and laws of the United States, specifically the 14th Amendment and claims under state law for tortious interference and defamation.

8.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants conduct business in this district.

### FACTUAL ALLEGATIONS

**I.**     **Background on the City of Chicago's Rules and Ordinances Regarding Transportation Network Providers and Public Chauffeurs.**

9.      On August 10, 2020, the City of Chicago, through the Commissioner of the Department of Business Affairs and Consumer Protection, enacted rules regarding Transportation Network Providers, pursuant to Chapter 9–115 of the Municipal Code of Chicago (the "TNP Ordinance").

10.     The Ordinance is a comprehensive set of rules which govern the conduct and relationship of TNPs (ride share companies like Uber and Lyft) within the City of Chicago. There are only two (2) major TNPs in the Chicagoland area—Uber and Lyft.

11.     Specifically, Rule TNP 1.10 requires TNPs to notify the City of Chicago of any driver deactivation along with providing at least one reason amongst the listed reasons for deactivation.

12.     The TNP Ordinance permits TNPs like Uber and Lyft to permanently deactivate their drivers from the TNP's platform due to any conduct that gives "rise to a public safety concern."  A "public safety concern" may be based on a mere "allegation or complaint" of things such as sexual misconduct, traffic incidents, assault/battery, driving under the influence of drugs and alcohol, etc., as well as just generically any "[c]onduct that gave rise to a public safety concern not itemized above in this section."  *See* Rule TNP 1.10.

13.     The Ordinance effectively allows the City of Chicago to compile and maintain a record of deactivated drivers without providing procedural safeguards, leaving drivers vulnerable to adverse consequences without due process.

3

14.     Plaintiff, as a driver for a TNP, was subject to the Ordinance, which resulted in her deactivation being reported to the City of Chicago without notice or an opportunity to contest the decision.

15.     However, the TNP Ordinance does permit for the Commissioner of the Department of Business Affairs and Consumer Protection to institute an action with the Department of Administrative Hearings to determine if any violation has occurred which would permit the administrative law officer to enter an order revoking or suspending the TNP chauffeur license and/or imposing a fine. *See* Rule TNP 5.13.

16.     Furthermore, the Commissioner of the Department of Business Affairs and Consumer Protection has the authority to rescind any TNP chauffeur license. *See* Rule TNP 5.14(a).  If the TNP chauffeur license is rescinded, the former TNP chauffeur licensee may, within ten days of the mailing of the notice of rescission, make written demand upon the BACP Commissioner for a hearing. Upon receipt of a timely written demand for a hearing, the Department shall within 30 days conduct a hearing. If at hearing the former TNP chauffeur licensee establishes through competent evidence that the rescission was based upon incorrect findings, the BACP Commissioner shall reinstate the petitioner's TNP chauffeur license. If at hearing the rescission is found to have been based upon correct findings, the rescission shall become final. After entry of a final rescission, the petitioner shall be ineligible for a new TNP chauffeur license for a period of 12 months. See Rule TNP 5.14(b).

17.     However, the City of Chicago permits TNPs like Uber and Lyft to deactivate their drivers without also requiring the Department of Business Affairs and Consumer Protection to first revoke, suspend, or rescind drivers' TNP Licenses. The TNPs failure to adhere to the procedural requirements mandated by the City of Chicago's administrative due process channels, as required under the TNP Ordinance, has created a procedural limbo. In this disconnect, the City of Chicago effectively bypasses its obligation to provide due process,

leaving drivers like Cohran in a state of legal and administrative uncertainty, without the protections that should be afforded under the law.

18.     The Ordinance further discriminates against TNP drivers compared to other categories of workers in the transportation industry who are not subject to similar requirements.

19.     For instance, on September 12, 2016, the City of Chicago, through the Commissioner of the Department of Business Affairs and Consumer Protection enacted rules regarding Public Chauffeurs pursuant to Chapter 9–115 of the Municipal Code of Chicago (the "Taxi Ordinance").

20.     The Taxi Ordinance does not contain any similar rule which would allow for or permit a chauffeur to be banned from driving without an investigation. *See* Rule CH1.05(b) ("Upon receipt of a complaint or an allegation, the Commissioner may request a public chauffeur licensee to immediately submit to a new fingerprint background check and a criminal history investigation).

21.     The Taxi Ordinance further states:

"In addition to the qualifications listed in MCC 9–104–050, at the discretion of the Commissioner and in the interest of public safety and welfare, an applicant may be denied renewal of the applicant's license if the applicant has within a 12–month time frame during the applicant's last license term acquired ***four (4) or more convictions, pleas of liability, and/or findings of liability*** for violations of any of the following: the Public Chauffeur Rules; the Municipal Code of Chicago sections concerning the operation of taxis and public passenger vehicles; rules related to the operation of taxis or public passenger vehicles, the Illinois motor vehicle code; or any other similar rules, laws, or regulations."

*See* Rule CH 2.01 (emphasis added).

22.     The Taxi Ordinance further states: "Upon receipt of a complaint or an allegation, the Commissioner may require a licensee to enroll and complete a rehabilitative educational course." *See* Rule CH 2.04(b).

23.     The Taxi Ordinance further states: "Authorized Personnel may confiscate a chauffeur license card when: (1) The chauffeur license or driver's license is expired, suspended, rescinded, canceled or revoked; or (2) As part of an investigation, including but not limited to possible fraud or forgery of the chauffeur license card." *See* Rule CH 5.09(a).

24.     Finally, the Taxi Ordinance also states:

"Except as otherwise specified in any particular rule or ordinance, an violation of these rules may be subject to the following penalties:
a.      Non-Aggravated First Offense: $50 to $100 fine for each offense.
b.      Repeated or Aggravated Offense: $50 to $400 fine for each offense, license suspension up to sixty (60) days, revocation of license, drug test, physical exam, and/or public chauffeur training courses."

*See* Rule CH 11.02.

25.     The Taxi Ordinance is obviously more lenient to drivers than the TNP Ordinance when it comes to discipline for drivers and creates unequal outcomes for mere allegations of wrongful conduct versus determinations of liability.

II.     **Background Regarding Plaintiff's Work History with Uber and Lyft.**

26.     Plaintiff began working part-time as a rideshare driver for Uber in 2017 and transitioned to full-time in early 2024.  Cohran is a single mother and relied on her ability to work as a rideshare driver to earn a living and provide for her family.

27.     As of April 6, 2024, Plaintiff maintained a 4.92/5 rating on the Uber app, reflecting her high level of performance as a rideshare driver.

28.     On April 6, 2024, Plaintiff received notice from Uber that she was banned from the Uber app, preventing her from continuing to work.

29.     On April 7, 2024, Plaintiff visited the Uber Greenlight Hub station located at 1401 W North Ave, Chicago, IL 60642 seeking clarification about her deactivation. Uber representatives refused to provide any information.

30.     On April 10, 2024, Uber informed Plaintiff via email that she was being investigated for a "safety incident," but Uber did not provide any further details.

31.     Despite multiple inquiries, Uber failed to inform Plaintiff of the specific nature of the alleged incident for several weeks.

32.     On April 28, 2024, Uber finally informed Plaintiff that she was being accused of spitting on a passenger on April 5, 2024. Uber did not disclose the passenger's identity.

33.     Plaintiff denied the allegation and appealed the decision internally, but Uber never responded to her appeal.

34.     Plaintiff then began driving for Lyft. However, on May 14, 2024, Lyft sent Cohran an email indicating that it deactivated her account as well, citing Chicago's Rule TNP 1.10, which mandates deactivation by other Transportation Network Providers (TNPs) if a driver is deactivated for a public safety concern.[1] In its email, Lyft stated the following:

> "Hello Ceresa:
>
> Pursuant to the City of Chicago's Rule TNP 1.10, Lyft was notified that you had been deactivated by another Transportation Network Provider (TNP) due to conduct that gave rise to a public safety concern.  As such, you are also deactivated from the Lyft platform.
>
> We do not have information about the underlying incident. If you would like more information about the reported incident, we recommend you follow up with the TNP that deactivated your account from their platform.
>
> If you have been reactivated by the other TNP and would like to be reactivated on the Lyft platform, please provide evidence (i.e., screenshots, written documentation, etc.) to our support team and we will review your reactivation eligibility.
>
> Only the TNPs are able to resolve your account deactivation.  The BACP is unable to assist you with this issue.
>
> Regards,
>
> The Lyft Team."

---

[1] https://www.chicago.gov/content/dam/city/depts/dol/rulesandregs/TNPRulesAmendedeff81020.pdf

35.     Upon information and belief, Uber disclosed to both the City of Chicago and Lyft, and/or the City of Chicago disclosed to Lyft that Cohran had been deactivated from the Uber platform for an alleged "public safety concern."

36.     Lyft informed Plaintiff that it did not have details about the alleged public safety concern yet still decided to deactivate her account without any due diligence.

37.     Cohran never had an opportunity to appeal the decision(s) made by Defendants or refute the allegations made against her for an alleged "public safety concern."

38.     As a result of the actions of Uber, Lyft, and the City of Chicago, Plaintiff has been unable to earn a living as a rideshare driver.

**COUNT I**
**VIOLATION OF FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983**
**DENIAL OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS**
**AGAINST THE CITY OF CHICAGO**

NOW COMES the Plaintiff, CERESA COHRAN, by and through her attorneys, for her Complaint against the Defendants, the City of Chicago, for a violation of 42 U.S.C. § 1983 ("§ 1983"), a violation of COHRAN's Fourteenth Amendment Due Process Rights, and in support thereof states and alleges as follows:

1–38.   Plaintiff realleges and incorporates paragraphs 1–38 as if fully set forth herein.

39.     The City of Chicago's Rule TNP 1.10 and related ordinances effectively bar Plaintiff from working as a rideshare driver without providing her with procedural due process.

40.     The City of Chicago failed to give Plaintiff notice or a chance to defend herself before allowing Rule TNP 1.10 to block her from working as a rideshare driver.

41.     The ordinance is overly broad and unjustifiably, arbitrarily, and unreasonably restricts Plaintiff's right to earn a living and violates her substantive and procedural due process rights under the 14th Amendment.

42.     Procedural due process requires that the government provide notice and an opportunity to be heard before depriving someone of a significant interest, such as their ability to work.

43.     The rule allows TNPs like Uber and Lyft to report deactivations to the City of Chicago without providing the driver notice of the allegation or an opportunity to contest it. Drivers can be permanently barred from platforms with no input into the decision-making process.

44.     The rule permits deactivations based on vague and unverified claims of "public safety concerns," leaving drivers defenseless against baseless accusations.

45.     There is no clear path for drivers to appeal or challenge the deactivation once reported under Rule TNP 1.10.

46.     This lack of procedural safeguards allows arbitrary and unchecked enforcement, which violates the Fourteenth Amendment.

47.     Substantive due process protects individuals from laws that arbitrarily or unjustifiably interfere with their fundamental rights. Courts have recognized the right to earn a living as a protected interest.

48.     Rule TNP 1.10 does not differentiate between serious, substantiated safety concerns (e.g., assault, DUI) and vague or minor allegations. This "catch-all" approach makes the rule overly broad, punishing drivers without sufficient evidence or specificity.

49.     The rule delegates immense power to TNPs (private companies) without setting standards for what constitutes a "public safety concern" or requiring verification of claims. A driver could be barred for unfounded complaints, such as a rude passenger making a false accusation.

50.     The rule effectively acts as a professional ban for drivers, preventing them from working for any TNP once deactivated from one, without sufficient justification or evidence.

WHEREFORE, the Plaintiff, CERESA COHRAN, requests that judgment be entered against the Defendant, the City of Chicago, and that this Court award her the following relief:

A. Declare that the City of Chicago's TNP Ordinance is unconstitutional as it violates the Due Process Clause of the 14th Amendment, and that enforcement of Rule TNP 1.10 violated Plaintiff's due process rights;
B. Issue an injunction and order prohibiting the City of Chicago from enforcing Rule TNP 1.10 while the case is pending.
C. Award compensatory damages for loss of income and emotional distress;
D. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and
E. Grant any other relief the Court deems just and proper.

## COUNT II
### VIOLATION OF FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983
### DENIAL OF EQUAL PROTECTION
### AGAINST THE CITY OF CHICAGO

NOW COMES the Plaintiff, CERESA COHRAN, by and through her attorneys, for her Complaint against the Defendants, the City of Chicago, for a violation of 42 U.S.C. § 1983 ("§ 1983"), a violation of COHRAN's Fourteenth Amendment Equal Protection Rights, and in support thereof states and alleges as follows:

1–50. Plaintiff realleges and incorporates paragraphs 1–50 as if fully set forth herein.

51. Plaintiff, as a TNP rideshare driver, was intentionally treated differently from other similarly situated and regulated drivers, such as Public Chauffeurs, and there was no rational basis for the difference in treatment.

52. Under the Taxi Ordinance, Public Chauffeurs are given due process before the Department of Business Affairs and Consumer Protection can rescind their Public Chauffeur license. *See supra*.

53. And while the TNP Ordinance does require the Department of Business Affairs and Consumer Protection to conduct an investigation before rescinding a TNP License, it does not prohibit TNPs such as Uber and Lyft from deactivating their drivers without any kind of due process hearings, thereby effectively rescinding the drivers' TNP Licenses without first triggering due process from the Department of Business Affairs and Consumer Protection.

54.     This disparate treatment is not justified by any legitimate government interest, and it arbitrarily singles out TNP drivers for unfavorable treatment.

55.     Public Chauffeurs (e.g., taxi drivers) are afforded due process protections under the Taxi Ordinance, including investigations, hearings, and appeals, before their licenses can be suspended or revoked. *See supra*.

56.     TNP drivers are not afforded these protections under Rule TNP 1.10, despite performing similar work. This disparate treatment is unjustified.

WHEREFORE, the Plaintiff, CERESA COHRAN, requests that judgment be entered against the Defendant, the City of Chicago, and that this Court award her the following relief:

A.  Declare that the City of Chicago's TNP Ordinance is unconstitutional as it violates the Equal Protection Clause of the 14th Amendment, and that enforcement of Rule TNP 1.10 violated Plaintiff's due process rights;
B.  Issue an injunction and order prohibiting the City of Chicago from enforcing Rule TNP 1.10 while the case is pending.
C.  Award compensatory damages for loss of income and emotional distress;
D.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and
E.  Grant any other relief the Court deems just and proper.

### COUNT III
### DEFAMATION
### AGAINST UBER TECHNOLOGIES, INC.

NOW COMES the Plaintiff, CERESA COHRAN, by and through her attorneys, for her Complaint against the Defendants, UBER TECHNOLOGIES, INC., for Defamation, and in support thereof states and alleges as follows:

1–56.   Plaintiff realleges and incorporates paragraphs 1–56 as if fully set forth herein.

57.     Uber communicated to the City of Chicago and/or Lyft that Plaintiff engaged in conduct that posed a "public safety concern," specifically that she allegedly spit on a passenger.

58.     These statements were false, as Plaintiff denies any such incident occurred.

59.     Uber's statements were made negligently, recklessly, or with actual malice.

60. Uber's statements attacked Cohran's integrity and reputation by falsely claiming that while working for Uber, Cohran committed some kind of "conduct that gave rise to a public safety concern."

61. Uber's allegations against Cohran include statements that prejudice Cohran in her trade, profession, and/or business.

62. Uber's allegations against Cohran include words that impute she has committed a crime—spitting on a passenger and thereby committing battery.

63. The defamatory character of Uber's statements—that Cohran committed some kind of "conduct that gave rise to a public safety concern" is obvious and apparent on its face; in that (a) the comments are not reasonably capable of an innocent construction; (b) the statements made can reasonably be interpreted as stating actual facts about the plaintiff, and not just an opinion; and (c) the statements cannot be understood as an exaggeration rather than a statement of literal fact.

64. Cohran has been substantially damaged as a direct and proximate result of Uber's unprivileged publication of the false and defamatory statements, in that: (a) Uber's actions caused Lyft to deactivate Plaintiff's account, damaging her reputation and causing financial harm, and (b) Cohran lost her job and her primary source of income and has been unable to find new employment since her termination.

WHEREFORE, the Plaintiff, CERESA COHRAN, requests that judgment be entered against the Defendant, UBER TECHNOLOGIES, INC., and that this Court award her the following relief:

    A. Award compensatory damages for loss of income and harm to Plaintiff's reputation;
    B. Award punitive damages for Uber's willful and malicious conduct;
    C. Award reasonable attorney's fees and costs; and
    D. Grant any other relief the Court deems just and proper.

## COUNT IV
### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### UBER TECHNOLOGIES, INC. AND THE CITY OF CHICAGO

NOW COMES the Plaintiff, CERESA COHRAN, by and through her attorneys, for her Complaint against the Defendants, UBER TECHNOLOGIES, INC. and THE CITY OF CHICAGO, for Tortious Interference with Prospective Economic Advantage, and in support thereof states and alleges as follows:

1–64.    Plaintiff realleges and incorporates paragraphs 1–64 as if fully set forth herein.

65.    Plaintiff had a valid business expectancy with Lyft to continue working as a rideshare driver.

66.    Uber and the City of Chicago had knowledge of Plaintiff's relationship with Lyft and expectancy of continued work relationship with Lyft.

67.    By reporting an unverified alleged "public safety concern" concerning Plaintiff to the City of Chicago and/or Lyft, Uber intentionally interfered with Plaintiff's prospective business relationship with Lyft.

68.    Likewise, by reporting an unverified alleged "public safety concern" concerning Plaintiff to Lyft, without first giving Plaintiff due process, the City of Chicago intentionally interfered with Plaintiff's prospective business relationship with Lyft.

69.    Uber and the City of Chicago's actions directly caused Lyft to deactivate Plaintiff's account, depriving her of the ability to earn income.

WHEREFORE, the Plaintiff, CERESA COHRAN, requests that judgment be entered against the Defendant, UBER TECHNOLOGIES, INC., and that this Court award her the following relief:

A.    Award compensatory damages for loss of income;
B.    Award punitive damages for Uber's intentional and wrongful conduct;
C.    Award reasonable attorney's fees and costs; and
D.    Grant any other relief the Court deems just and proper.

**COUNT V**
**NEGLIGENCE**
**LYFT, INC.**

NOW COMES the Plaintiff, CERESA COHRAN, by and through her attorneys, for her Complaint against the Defendants, LYFT, INC., for Negligence, and in support thereof states and alleges as follows:

1–69.    Plaintiff realleges and incorporates paragraphs 1–69 as if fully set forth herein.

70.    As an operator of a transportation platform, Lyft owed a duty of care to its drivers, including Plaintiff, to act with reasonable care in the management and operation of its platform, including when deciding whether to suspend or deactivate drivers based on reports from other parties.

71.    Specifically, Lyft owed Plaintiff a duty to conduct a reasonable and independent investigation before deactivating her from the platform, particularly when the deactivation was based on third–party reports, such as those provided by Uber and/or the City of Chicago regarding alleged "public safety concerns."

72.    Lyft breached its duty of care to Plaintiff Cohran by deactivating her from its platform on or around May 14, 2024, based on an unverified and unsubstantiated report of a "public safety concern" from Uber and/or the City of Chicago, without conducting its own independent investigation into the truth of the allegations.

73.    Lyft's reliance on Uber's report, without providing Plaintiff an opportunity to challenge the allegations or conducting any review of the circumstances, constitutes a failure to act reasonably and in good faith, particularly given the significant impact deactivation had on Plaintiff's ability to earn a living.

74.    By failing to investigate the veracity of the report or provide Plaintiff with the opportunity to respond, Lyft acted negligently in handling the decision to deactivate Plaintiff's access to the app.

75.     As a direct and proximate result of Lyft's breach of its duty, Cohran was wrongfully deactivated from the platform, losing her ability to work as a driver and earn income through Lyft.

76.     Lyft's decision to deactivate Plaintiff's account based solely on an unverified report from Uber, without any independent investigation, directly caused Plaintiff to suffer financial harm, as she was unable to continue her work as a driver and was unfairly removed from the platform.

77.     As a result of Lyft's negligence, Plaintiff Cohran has suffered damages, including lost income, lost business opportunities, and financial harm stemming from her wrongful deactivation from the Lyft platform.

78.     Additionally, Plaintiff has experienced emotional distress, anxiety, and frustration due to the abrupt and unexplained termination of her access to the app, which was based on unsubstantiated and false allegations that Lyft failed to properly investigate.

WHEREFORE, the Plaintiff, CERESA COHRAN, requests that judgment be entered against the Defendant, LYFT, INC., and that this Court award her the following relief:

    A.  Award compensatory damages for lost income;
    B.  Pre-judgment and post-judgment interest as allowed by law;
    C.  Award reasonable attorney's fees and costs; and
    D.  Grant any other relief the Court deems just and proper.

## COUNT VI
## UNJUST ENRICHMENT
## LYFT, INC.

NOW COMES the Plaintiff, CERESA COHRAN, by and through her attorneys, for her Complaint against the Defendants, LYFT, INC., for Unjust Enrichment, and in support thereof states and alleges as follows:

1-78.   Plaintiff realleges and incorporates paragraphs 1–78 as if fully set forth herein.

79.     Cohran was driver for Lyft between April 2024 and May 2024 providing transportation services to customers, including during periods where Lyft charges its customers "surge pricing."

80.     During "surge pricing" periods, Lyft charged its passengers an increased fare due allegedly to higher demand for rides. Lyft represented that surge pricing reflects the increased difficulty and higher value of rides provided by drivers during these high-demand times.

81.     Despite charging passengers this increased fare, Lyft has failed to pass on the corresponding additional income from surge pricing to its drivers, including Cohran. Instead, Lyft retained either all or a substantial portion of the additional surge fare for its own financial gain.

82.     Plaintiff and other Lyft drivers, who are responsible for providing the actual transportation services during surge pricing periods, do not receive the benefit of the additional income generated from the higher fares collected by Lyft during such times.

83.     Lyft has been unjustly enriched by retaining the additional income from surge pricing that also rightfully belongs to the drivers who perform the services during these periods.

84.     It would be inequitable and unjust for Lyft to retain the additional fare amounts without compensating the drivers such as Cohran who have incurred the burdens and responsibilities of providing transportation services during alleged surge periods.

85.     As a direct and proximate result of Lyft's conduct, Plaintiff and other drivers have been deprived of the benefit of their services and have suffered financial harm.

86.     Plaintiff seeks restitution of the unjust enrichment obtained by Lyft in an amount to be determined at trial, representing the additional income wrongfully retained by Lyft from surge pricing.

WHEREFORE, the Plaintiff, CERESA COHRAN, requests that judgment be entered against the Defendant, LYFT, INC., and that this Court award her the following relief:

A. An order requiring Lyft to disgorge all profits and benefits wrongfully obtained through its retention of surge pricing fares;
B. An award of restitution to Plaintiff for the income unjustly retained by Lyft;
C. Pre-judgment and post-judgment interest as allowed by law;
D. Attorney's fees and costs of this action; and
E. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
CERESA COHRAN

By:    /s/ Matthew R. Custardo
       One of her Attorneys

Matthew R. Custardo (ARDC #: 6329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com

**<u>VERIFICATION</u>**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_Ceresa Cohran (Nov 18, 2024 14:47 CST)_

CERESA COHRAN

Matthew R. Custardo (ARDC #: 06329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com

17